**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-502**

_____

MARK WEST, RICKIE DON BASH,
RAYNARD STEWART MOORE,
SHARLENE KNIGHT, ANNA MARIE
ROSS, BRUCE ADAMS, BRIAN
THOMPSON, MICHAEL MCMANUS,
STEVEN PRICE, CARL HARVELL,
STACIA ANDREA WILKES,
and all others similarly situated,

                Plaintiffs,

    vs.

CONTINENTAL AUTOMOTIVE, INC.,
and PENSION PLAN FOR HOURLY-PAID
EMPLOYEES OF CONTINENTAL
AUTOMOTIVE, INC. AND CERTAIN
AFFILIATE COMPANIES,

                Defendants.
_____

## CLASS ACTION COMPLAINT

1.    This is a class action against Continental Automotive, Inc. and the Pension Plan for Hourly-Paid Employees of Continental Automotive, Inc. and Certain Affiliate Companies ("the Plan" or "the Pension Plan"), seeking recovery of benefits for themselves and other similarly-situated participants, beneficiaries, retirees, eligible dependents, and surviving spouses, pursuant to an employee pension benefit plan under the Employment Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq*.

## **PARTIES**

2.    Plaintiff and class representative Mark West, a current resident of Rock Hill, S.C.,

is a former employee of Continental and worked in the Charlotte Division of the Western District of North Carolina at all relevant times alleged herein.

3. Plaintiff and class representative Rickie Don Bash, a current resident of Surfside Beach, S.C., is a former employee of Continental and worked in the Charlotte Division of the Western District of North Carolina at all relevant times alleged herein.

4. Plaintiff and class representative Raynard Stewart Moore, a current resident of Rock Hill, S.C., is a former employee of Continental and worked in the Charlotte Division of the Western District of North Carolina at all relevant times alleged herein.

5. Plaintiff and class representative Sharlene Knight, a current resident of Kershaw, S.C., is a former employee of Continental and worked in the Charlotte Division of the Western District of North Carolina at all relevant times alleged herein.

6. Plaintiff and class representative Anna Marie Ross, a current resident of York, S.C., is the surviving spouse of Joseph Ross, deceased, a former employee of Continental that worked in the Charlotte Division of the Western District of North Carolina at all relevant times alleged herein.

7. Plaintiff and class representative Bruce Adams, a current resident of Lancaster, S.C., is a former employee of Continental and worked in the Charlotte Division of the Western District of North Carolina at all relevant times alleged herein.

8. Plaintiff and class representative Brian Thompson, a current resident of Indian Trail, N.C., is a former employee of Continental and worked in the Charlotte Division of the Western District of North Carolina at all relevant times alleged herein.

9. Plaintiff and class representative Michael McManus, a current resident of

2

Lancaster, S.C., is a former employee of Continental and worked in the Charlotte Division of the Western District of North Carolina at all relevant times alleged herein.

10.     Plaintiff and class representative Steven Price, a current resident of Charlotte, N.C., is a former employee of Continental and worked in the Charlotte Division of the Western District of North Carolina at all relevant times alleged herein.

11.     Plaintiff and class representative Carl Harvell, a current resident of Concord, N.C., is a former employee of Continental and worked in the Charlotte Division of the Western District of North Carolina at all relevant times alleged herein.

12.     Plaintiff and class representative Stacia Andrea Wilkes, a current resident of Charlotte, N.C., is a former employee of Continental and worked in the Charlotte Division of the Western District of North Carolina at all relevant times alleged herein.

13.     The individual plaintiffs and persons similarly-situated, and their eligible dependents and surviving spouses, are "participants" in or "beneficiaries" of the Plan, as those terms are defined in ERISA Sections 3(7) and 3(8), 29 U.S.C. § 1002(7) and (8).

14.     Plaintiffs are suing in both an individual and representative capacity.

15.     Defendant Continental is a Delaware corporation that at all relevant times alleged herein did substantial business in the Western District of North Carolina and continues to do business in this district.

16.     Defendant Pension Plan for Hourly-Paid Employees of Continental Automotive, Inc. and Certain Affiliated Companies is an "employee pension benefit plan" and "pension plan" within the meaning of ERISA Section 3(2), 29 U.S.C. §1002(2).

17.     The Plan is subject to being sued as a separate entity pursuant to ERISA Section 502(d)(1), 29 U.S.C. §1132(d)(1).

3

18.     Upon information and belief, Ted Gossert is the Plan Administrator, as that term is defined in ERISA Section 3(16)(A), 29 U.S.C. § 1002(16)(A).

19.     Defendant Continental is the Plan Sponsor, as that term is defined in ERISA Section 3(16)(B), 29 U.S.C. § 1002(16)(B).

## JURISDICTION AND VENUE

20.     Plaintiffs seek relief on behalf of themselves and persons similarly-situated through the private causes of action conferred by ERISA Section 502(a) (29 U.S.C. § 1132(a)) and Section 404 (29 U.S.C. § 1104).  Therefore, this Court has subject matter jurisdiction pursuant to ERISA Section 502(e)(1), 29 U.S.C. § 1132(e)(1), Section 502(f), 29 U.S.C. § 1132(f),  and federal question jurisdiction pursuant to  28 U.S.C. § 1331.

21.     This Court has personal jurisdiction over Defendants under ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, many of the breaches took place in this district, one or more of the Defendants reside in this district, Defendants have systemic general business contacts with the nation as a whole and in particular this district, and pursuant to ERISA's nationwide service of process.

22.     Venue of this action is proper pursuant to ERISA Section 502(e)(2), 29 U.S.C. §1132(e)(2), because the Plan was administered in this district, injury occurred directly to Plaintiffs in this district,  where they live and work, some or all of the breaches occurred in this district, and because Defendants may be found in this district.

## FACTUAL ALLEGATIONS

### A.  The Pension Plan

23.     The named Plaintiffs and similarly situated class members all have accrued, vested pension benefits based upon years of service. Under the terms of the Plan in effect at the

time their pension benefits became vested based upon their years of service or age, eligible employees of Continental are entitled to retirement and pension benefits following termination of their employment.

24. The Plan provides for "Normal Retirement" under Section 4.1:

> **4.1 Normal Retirement.** A Member who continues in the employ of a Participating Company or an Affiliate until Normal Retirement Age shall be eligible to retire on or after such Member's Normal Retirement Date and receive a nonforfeitable retirement benefit commencing on the first day of the month coinciding with or next following his actual date of Retirement, in such form as is provided in Article V, and in the amount provided in Article VI.

25. The Plan provides for "Regular Early Retirement" under Section 4.2:

> **4.2 Regular Early Retirement.** Except as otherwise provided in the relevant Schedule of Benefits, a Member who continues in the employ of a Participating Entity or an Affiliate until he:
> (a) has attained age fifty-five (55) and has completed at least ten (10) full years of Vesting and Eligibility Service; or
> (b) has completed at least thirty (30) full years of Vesting and Eligibility Service; regardless of age;
> shall be eligible to retire and receive a retirement benefit commencing on the first day of any month on or after the date of early retirement, as he shall select in writing, in such form as is provided in Article V, and in the amount provided in Article VI.

26. The Plan provides for "Special Early Retirement" under Section 4.3:

> **4.3 Special Early Retirement.** A Member who either:
> (a) has attained age sixty-two (62) and has completed ten (10) or more full years of Vesting and Eligibility Service;
> (b) has attained age fifty-five (55) but not age sixty-two (62) and has completed thirty (30) or more full years of Vesting and Eligibility Service; or
> (c) effective as of the date set forth under the applicable Schedule of Benefits, has met the Special Early Retirement requirements for the applicable Schedule of Benefits under which he is a Covered Employee.
> shall be eligible to retire and receive a retirement benefit commencing on the first day of any month on or after the date of early retirement, as he shall select in writing, in such form as is provided in Article V, and in the amount provided in Article VI …

5

27.    The Plan provides for "Deferred Vested Benefit" under Section 4.4:

> **4.4 <u>Deferred Vested Benefit</u>.** Except as otherwise provided in the relevant Schedule of Benefits, a Member who has a Termination of Employment after he has completed at least five (5) years of Vesting and Eligibility Service, but before he is eligible for an early retirement benefit or any other benefit under this Plan, shall be eligible for a Deferred Vested Benefit commencing on the first day of any month after his attainment of age fifty-five (55), as he shall select in writing …

28.    The Plan defines "Vesting and Eligibility Service" under Section 1.62:

> **1.62 <u>Vesting and Eligibility Service</u>.** For any Employee, the aggregate of all such Employee's period of Continuous Service …

29.    The Plan defines "Continuous Service" under Section 1.15:

> **1.15 <u>Continuous Service</u>.** For any Employee, any period (computed to the nearest full calendar month), including periods prior to the Effective Date, during which he was employed by a Participating Entity or any Affiliate. Each such period shall be measured from the Employee's Date of Hire to his date of Termination of Employment.

30.    The Plan defines "Date of Hire" under Section 1.19:

> **1.19 <u>Date of Hire</u>.** The first day an Employee works at least one (1) hour for a Participating Entity or any Affiliate…

31.    The Plan defines "Termination of Employment" under Section 1.56:

> **1.56 <u>Termination of Employment</u>.** With respect to an Employee, a Termination of Employment occurs upon the earlier of:
> (a) the date the Employee quits, retires, is discharged, or dies; or
> (b) the first anniversary of the date the Employee was absent for any other reason; however …
> (4) if the Employee is absent due to layoff, has accrued 180 days of Continuous Service prior to the commencement of such layoff, is eligible for recall rights, and does not return to active employment within two (2) years, a Termination of Employment will occur on the earlier of:
> (i) the second anniversary of the date the Employee was absent due to layoff; or
> (ii) the date upon which the Employee's period of absence due to such layoff equals the period of Continuous Service accrued by the Employee prior to such layoff.

6

32.     The named Plaintiffs and similarly-situated Class Members fall into two classes, as set forth in more detail in the paragraphs below.

**B.  Class 1 Plaintiffs**

<u>**Plaintiff Mark West**</u>

33.     Plaintiff Mark West was born on October 18, 1959.

34.     Plaintiff West's employment with Defendant Continental began on or about February 20, 1978 in the Charlotte, North Carolina Continental tire plant.

35.     Plaintiff West was a participant in the Plan.

36.     On or about July 8, 2006, Plaintiff West was laid off by Defendant Continental.

37.     Plaintiff West had two-year recall rights starting from the date of his layoff.

38.     On or about July 8, 2008, Plaintiff West's recall rights expired and his employment with Defendant Continental was terminated on that date.

39.     Plaintiff West worked for Defendant Continental from February 20, 1978 to July 8, 2008.

40.     At the time of his termination, Plaintiff West was 48 years old and had in excess of 30 years of Vesting and Eligibility Service under the terms of the Plan.

41.     Defendants failed to include all of Plaintiff West's Vesting and Eligibility Service under the terms of the Plan.

42.     Defendants improperly determined that Plaintiff West was eligible only for a Deferred Vested Pension.

43.     Plaintiff West is entitled to additional Vesting and Eligibility Service for the time he was laid off with recall rights from Defendant Continental under the terms of the Plan.

7

44.     Plaintiff West is entitled to Regular Early Retirement under the terms of the Plan.

**Plaintiff Rickie Don Bash**

45.     Plaintiff Rickie Don Bash was born on September 1, 1958.

46.     Plaintiff Bash's employment with Defendant Continental began on or about July 5, 1978 in the Charlotte, North Carolina Continental tire plant.

47.     Plaintiff Bash was a participant in the Plan.

48.     On or about July 8, 2006, Plaintiff Bash was laid off by Defendant Continental.

49.     Plaintiff Bash had two-year recall rights starting from the date of his layoff.

50.     On or about July 8, 2008, Plaintiff Bash's recall rights expired and his employment with Defendant Continental was terminated on that date.

51.     Plaintiff Bash worked for Defendant Continental from July 5, 1978 to July 8, 2008.

52.     At the time of his termination, Plaintiff Bash was 49 years old and had in excess of 30 years of Vesting and Eligibility Service under the terms of the Plan.

53.     Defendants failed to include all of Plaintiff Bash's Vesting and Eligibility Service under the terms of the Plan.

54.     Defendants improperly determined that Plaintiff Bash was eligible only for a Deferred Vested Pension.

55.     Plaintiff Bash is entitled to additional Vesting and Eligibility Service for the time he was laid off with recall rights from Defendant Continental under the terms of the Plan.

56.     Plaintiff Bash is entitled to Regular Early Retirement under the terms of the Plan.

8

**Plaintiff Raynard Stewart Moore**

57.    Plaintiff Raynard Stewart Moore was born on February 21, 1955.

58.    Plaintiff Moore's employment with Defendant Continental began on or about June 12, 1978 in the Charlotte, North Carolina Continental tire plant.

59.    Plaintiff Moore was a participant in the Plan.

60.    On or about July 8, 2006, Plaintiff Moore was laid off by Defendant Continental.

61.    Plaintiff Moore had two-year recall rights starting from the date of his layoff.

62.    On or about July 8, 2008, Plaintiff Moore's recall rights expired and his employment with Defendant Continental was terminated on that date.

63.    Plaintiff Moore worked for Defendant Continental from June 12, 1978 to July 8, 2008.

64.    At the time of his termination, Plaintiff Moore was 53 years old and had in excess of 30 years of Vesting and Eligibility Service under the terms of the Plan.

65.    Defendants failed to include all of Plaintiff Moore's Vesting and Eligibility Service under the terms of the Plan.

66.    Defendants improperly determined that Plaintiff Moore was eligible only for a Deferred Vested Pension.

67.    Plaintiff Moore is entitled to additional Vesting and Eligibility Service for the time he was laid off with recall rights from Defendant Continental under the terms of the Plan.

68.    Plaintiff Moore is entitled to Regular Early Retirement under the terms of the Plan.

**Plaintiff Sharlene Knight**

69.     Plaintiff Sharlene Knight was born on June 8, 1955.

70.     Plaintiff Knight's employment with Defendant Continental began on or about October 6, 1986 in the Charlotte, North Carolina Continental tire plant.

71.     Plaintiff Knight was a participant in the Plan.

72.     On or about May 12, 2006, Plaintiff Knight was laid off by Defendant Continental.

73.     Plaintiff Knight had two-year recall rights starting from the date of her layoff.

74.     On or about May 12, 2008, Plaintiff Knight's recall rights expired and her employment with Defendant Continental was terminated on that date.

75.     Plaintiff Knight worked for Defendant Continental from October 6, 1986 to May 12, 2008.

76.     At the time of her termination, Plaintiff Knight was 52 years old.

77.     Defendants failed to include all of Plaintiff Knight's Vesting and Eligibility Service in calculating her Deferred Vested Pension under the terms of the Plan.

78.     Plaintiff Knight is entitled to additional Vesting and Eligibility Service for the time she was laid off with recall rights from Defendant Continental under the terms of the Plan.

**Plaintiff Anna Marie Ross**

79.     Former Continental employee Joseph Ross was born on October 12, 1959.

80.     Ross' employment with Defendant Continental began on or about July 5, 1978 in the Charlotte, North Carolina Continental tire plant.

Case 3:16-cv-00502   Document 1   Filed 06/29/16   Page 10 of 28

81.     Ross was a participant in the Plan.

82.     On or about July 8, 2006, Ross was laid off by Defendant Continental.

83.     Plaintiff Ross had two-year recall rights starting from the date of his layoff.

84.     On or about July 8, 2008, Ross' recall rights expired and his employment with Defendant Continental was terminated on that date.

85.     Ross worked for Defendant Continental from July 5, 1978 to July 8, 2008.

86.     At the time of his termination, Ross was 48 years old and had in excess of 30 years of Vesting and Eligibility Service under the terms of the Plan.

87.     Defendants failed to include all of Ross' Vesting and Eligibility Service under the terms of the Plan.

88.     Defendants improperly determined that Ross was eligible only for a Deferred Vested Pension.

89.     On or about April 25, 2014, Ross properly elected 100 percent contingent annuitant survivorship benefits for his wife, Plaintiff Anna Marie Ross.

90.     Plaintiff Anna Marie Ross is a beneficiary of the Plan.

91.     Joseph Ross died on October 29, 2014.

92.     Plaintiff Anna Marie Ross is entitled to survivorship benefits based upon Joseph Ross' attainment of additional Vesting and Eligibility Service for the time he was laid off with recall rights from Defendant Continental under the terms of the Plan.

93.     Plaintiff Anna Marie Ross is entitled to survivorship benefits based upon Joseph Ross' attainment of Regular Early Retirement under the terms of the Plan.

**C. Class 2 Plaintiffs**

**Plaintiff Bruce Adams**

94.     Plaintiff Bruce Adams was born on May 29, 1958.

95.     Plaintiff Adams' employment with Defendant Continental began on or about December 8, 1980 in the Charlotte, North Carolina Continental tire plant.

96.     Plaintiff Adams was a participant in the Plan.

97.     On or about December 13, 2008, Plaintiff Adams was laid off by Defendant Continental.

98.     Plaintiff Adams had two-year recall rights starting from the date of his layoff.

99.     On or about December 13, 2010, Plaintiff Adams' recall rights expired and his employment with Defendant Continental was terminated on that date.

100.     Plaintiff Adams worked for Defendant Continental from December 8, 1980 to December 13, 2010.

101.     At the time of his termination, Plaintiff Adams was 52 years old and had in excess of 30 years of Vesting and Eligibility Service under the terms of the Plan.

102.     Defendants failed to include all of Plaintiff Adams' Vesting and Eligibility Service under the terms of the Plan.

103.     Defendants improperly determined that Plaintiff Adams was eligible only for a Deferred Vested Pension.

104.     Defendants offered Plaintiff Adams a buyout based upon their erroneous calculation that he was entitled to a Deferred Vested Pension and based upon an incorrect number of years of Vesting and Eligibility Service.

105.    Plaintiff Adams accepted the wrongly calculated buyout in or about December 2014, in reliance upon Defendants' false calculation.

106.    Plaintiff Adams is entitled to receive a buyout based upon his having earned additional Vesting and Eligibility Service and Regular Early Retirement under the terms of the Plan.

**Plaintiff Brian Thompson**

107.    Plaintiff Brian Thompson was born on December 2, 1959.

108.    Plaintiff Thompson's employment with Defendant Continental began on or about November 17, 1980 in the Charlotte, North Carolina Continental tire plant.

109.    Plaintiff Thompson was a participant in the Plan.

110.    On or about December 2, 2008, Plaintiff Thompson was laid off by Defendant Continental.

111.    Plaintiff Thompson had two-year recall rights starting from the date of his layoff.

112.    On or about December 2, 2010, Plaintiff Thompson's recall rights expired and his employment with Defendant Continental was terminated on that date.

113.    Plaintiff Thompson worked for Defendant Continental from November 17, 1980 to December 2, 2010.

114.    At the time of his termination, Plaintiff Thompson was 51 years old and had in excess of 30 years of Vesting and Eligibility Service under the terms of the Plan.

115.    Defendants failed to include all of Plaintiff Thompson's Vesting and Eligibility Service under the terms of the Plan.

116.    Defendants improperly determined that Plaintiff Thompson was eligible only for a

Deferred Vested Pension.

117.    Defendants offered Plaintiff Thompson a buyout based upon their erroneous calculation that he was entitled to a Deferred Vested Pension and based upon an incorrect number of years of Vesting and Eligibility Service.

118.    Plaintiff Thompson accepted the wrongly calculated buyout in or about November 2014, in reliance upon Defendants' false calculation.

119.    Plaintiff Thompson is entitled to receive a buyout based upon his having earned additional Vesting and Eligibility Service and Regular Early Retirement under the terms of the Plan.

**Plaintiff Michael McManus**

120.    Plaintiff Michael McManus was born on February 26, 1958.

121.    Plaintiff McManus' employment with Defendant Continental began on or about February 6, 1978 in the Charlotte, North Carolina Continental tire plant.

122.    Plaintiff McManus was a participant in the Plan.

123.    On or about July 8, 2006, Plaintiff McManus was laid off by Defendant Continental.

124.    Plaintiff McManus had two-year recall rights starting from the date of his layoff.

125.    On or about July 8, 2008, Plaintiff McManus' recall rights expired and his employment with Defendant Continental was terminated on that date.

126.    Plaintiff McManus worked for Defendant Continental from February 6, 1978 to July 8, 2008.

127.    At the time of his termination, Plaintiff McManus was 50 years old and had in

14

excess of 30 years of Vesting and Eligibility Service under the terms of the Plan.

128.     Defendants failed to include all of Plaintiff McManus' Vesting and Eligibility Service under the terms of the Plan.

129.     Defendants improperly determined that Plaintiff McManus was eligible only for a Deferred Vested Pension.

130.     Defendants offered Plaintiff McManus a buyout based upon their erroneous calculation that he was entitled to a Deferred Vested Pension and based upon an incorrect number of years of Vesting and Eligibility Service.

131.     Plaintiff McManus accepted the wrongly calculated buyout in or about October 2014, in reliance upon Defendants' false calculation.

132.     Plaintiff McManus is entitled to receive a buyout based upon his having earned additional Vesting and Eligibility Service and Regular Early Retirement under the terms of the Plan.

**Plaintiff Steven Price**

133.     Plaintiff Steven Price was born on October 12, 1962.

134.     Plaintiff Price's employment with Defendant Continental began on or about December 1, 1980 in the Charlotte, North Carolina Continental tire plant.

135.     Plaintiff Price was a participant in the Plan.

136.     On or about December 13, 2008, Plaintiff Price was laid off by Defendant Continental.

137.     Plaintiff Price had two-year recall rights starting from the date of his layoff.

138.     On or about December 13, 2010, Plaintiff Price's recall rights expired and his

15

employment with Defendant Continental was terminated on that date.

139.     Plaintiff Price worked for Defendant Continental from December 1, 1980 to December 13, 2010.

140.     At the time of his termination, Plaintiff Price was 48 years old and had in excess of 30 years of Vesting and Eligibility Service under the terms of the Plan.

141.     Defendants failed to include all of Plaintiff Price's Vesting and Eligibility Service under the terms of the Plan.

142.     Defendants improperly determined that Plaintiff Price was eligible only for a Deferred Vested Pension.

143.     Defendants offered Plaintiff Price a buyout based upon their erroneous calculation that he was entitled to a Deferred Vested Pension and based upon an incorrect number of years of Vesting and Eligibility Service.

144.     Plaintiff Price accepted the wrongly calculated buyout in or about November 2014, in reliance upon Defendants' false calculation.

145.     Plaintiff Price is entitled to receive a buyout based upon his having earned additional Vesting and Eligibility Service and Regular Early Retirement under the terms of the Plan.

**Plaintiff Carl Harvell**

146.     Plaintiff Carl Harvell was born on November 24, 1959.

147.     Plaintiff Harvell's employment with Defendant Continental began on or about February 5, 1979 in the Charlotte, North Carolina Continental tire plant.

148.     Plaintiff Harvell was a participant in the Plan.

149.    On or about December 2, 2008, Plaintiff Harvell was laid off by Defendant Continental.

150.    Plaintiff Harvell had two-year recall rights starting from the date of his layoff.

151.    On or about December 2, 2010, Plaintiff Harvell's recall rights expired and his employment with Defendant Continental was terminated on that date.

152.    Plaintiff Harvell worked for Defendant Continental from February 5, 1979 to December 2, 2010.

153.    At the time of his termination, Plaintiff Harvell was 51 years old and had in excess of 30 years of Vesting and Eligibility Service under the terms of the Plan.

154.    Defendants failed to include all of Plaintiff Harvell's Vesting and Eligibility Service under the terms of the Plan.

155.    Defendants improperly determined that Plaintiff Harvell was eligible only for a Deferred Vested Pension.

156.    Defendants offered Plaintiff Harvell a buyout based upon their erroneous calculation that he was entitled to a Deferred Vested Pension and based upon an incorrect number of years of Vesting and Eligibility Service.

157.    Plaintiff Harvell accepted the wrongly calculated buyout in or about November 2014, in reliance upon Defendants' false calculation.

158.    Plaintiff Harvell is entitled to receive a buyout based upon his having earned additional Vesting and Eligibility Service and Regular Early Retirement under the terms of the Plan.

**Plaintiff Stacia Andrea Wilkes**

159.     Plaintiff Stacia Andrea Wilkes was born on December 3, 1968.

160.     Plaintiff Wilkes' employment with Defendant Continental began on or about July 8, 1998 in the Charlotte, North Carolina Continental tire plant.

161.     Plaintiff Wilkes was a participant in the Plan.

162.     On or about March 17, 2006, Plaintiff Wilkes was laid off by Defendant Continental.

163.     Plaintiff Wilkes had two-year recall rights starting from the date of her layoff.

164.     On or about March 17, 2008, Plaintiff Wilkes' recall rights expired and her employment with Defendant Continental was terminated on that date.

165.     Plaintiff Wilkes worked for Defendant Continental from July 8, 1998 to March 17, 2008.

166.     At the time of her termination, Plaintiff Wilkes was 39 years old.

167.     Defendants failed to include all of Plaintiff Wilkes' Vesting and Eligibility Service in calculating her Deferred Vested Pension under the terms of the Plan.

168.     Defendants offered Plaintiff Wilkes a buyout based upon their erroneous calculation of her number of years of Vesting and Eligibility Service.

169.     Plaintiff Wilkes accepted the wrongly calculated buyout in or about January 2015, in reliance upon Defendants' false calculation.

170.     Plaintiff Wilkes is entitled to receive a buyout based upon her having earned additional Vesting and Eligibility Service under the terms of the Plan.

**D. Litigation Directly Applicable to this Action**

171.    The basis for Plaintiffs' claims for relief in this case arose on January 28, 2016 when this Court entered judgment in favor of the plaintiff, Garry Carroll, a former employee of Defendant Continental and a participant in the Plan, in *Garry Carroll v. Continental Automotive, Inc. and Pension Plan for Hourly-Paid Employees of Continental Automotive, Inc. and Certain Affiliated Companies*, Civ. No. 3:13-cv-693 (W.D.N.C. Jan. 28, 2016). Defendants have appealed this decision to the Fourth Circuit Court of Appeals (Record No. 16-1152).

**E. Exhaustion of Administrative Remedies**

172.    In *Carroll*, Defendants have repeatedly denied the grounds for relief upon which Plaintiffs rely here, that the Plan provides that the time in which an employee is laid off with recall rights counts towards the employee's Vesting and Eligibility Service.

173.    Defendants have vigorously opposed (and continue to oppose) the identical basis for the relief alleged by Plaintiffs here:

   a.  Carroll filed a claim for Regular Early Retirement on February 16, 2013. On April 5, 2013, Defendants denied Carroll's claim because it stated that the period of time Carroll was laid off with recall rights did not count towards his Vesting and Eligibility Service under the terms of the Plan.

   b.  On May 30, 2013, Carroll appealed the denial of his claim for Regular Early Retirement. On October 8, 2013, Defendants upheld their denial on the grounds that the period of time Carroll was laid off with recall rights did not count towards his Vesting and Eligibility Service under the terms of the Plan.

   c.  On December 17, 2013, Carroll filed a lawsuit in this Court seeking Regular Early Retirement benefits under the Plan. On February 18, 2014, Defendants answered

Carroll's Complaint, denying requested relief on the principal grounds that the period of time Carroll was laid off with recall rights did not count towards his Vesting and Eligibility Service under the terms of the Plan. *See Carroll*, Civ. No. 3:13-cv-693 (ECF Doc. Nos. 1, 7).

d. On March 2, 2015, Defendants sought summary judgment on the principal grounds that the period of time Carroll was laid off with recall rights did not count towards his Vesting and Eligibility Service under the terms of the Plan. *See Carroll*, Civ. No. 3:13-cv-693 (ECF Doc. No. 21).

e. On March 2, 2015, March 26, 2015, and April 6, 2015, Defendants filed summary judgment principal, response, and reply briefs arguing that Carroll was not entitled to Regular Early Retirement on the principal grounds that the period of time Carroll was laid off with recall rights did not count towards his Vesting and Eligibility Service under the terms of the Plan. *See Carroll*, Civ. No. 3:13-cv-693 (ECF Doc. Nos. 22, 26, 29).

f. After this Court ruled against Defendants on August 31, 2015, Defendants filed objections to U.S. Magistrate Judge Dennis L. Howell's Memorandum and Recommendation decision that Carroll was entitled to Regular Early Retirement on the principal grounds that the period of time Carroll was laid off with recall rights did not count towards his Vesting and Eligibility Service under the terms of the Plan. *See Carroll*, Civ. No. 3:13-cv-693 (ECF Doc. Nos. 31, 32).

g. After this Court again ruled against them on January 28, 2016, Defendants appealed U.S. District Judge Graham C. Mullen's decision to enter judgment in favor of Carroll to the United States Court of Appeals for the Fourth Circuit. *See Carroll*, Civ.

No. 3:13-cv-693 (ECF Doc. Nos. 35, 38).

h.  On April 6, 2016 and May 23, 2016, Defendants filed appellate briefs denying that Carroll was entitled to Regular Early Retirement on the principal grounds that the period of time Carroll was laid off with recall rights did not count towards his Vesting and Eligibility Service under the terms of the Plan. *Carroll*, USCA Rec. No. 16-1152 (ECF Doc. Nos. 12, 18).

i.  Following entrance of this Court's final judgment, on February 17, 2016, Plaintiffs' counsel wrote to Defendants on behalf of all similarly-situated former Continental employees to formally request that Defendants recalculate the employees' retirement benefits consistent with this Court's judgment. By letter dated March 16, 2016, Defendants refused this request, responding that their "appeal is currently pending and until all appeals of the matter are exhausted, the Plan does not deem the decision to be final."

174.  In short, Defendants have now repeatedly taken the position directly opposite to Plaintiffs' substantive grounds for relief over the past three years, as described in more detail in paragraph 174(a)-(i) *supra*, the last of which occurred in the face of two judges of this Court ruling against their position. It is therefore clear that identical claims brought by other participants would similarly be denied.

175.  Given Defendants' repeated denial of this identical claim, as well as their failure to comply with this Court's holdings, exhaustion of administrative remedies would be futile.

176.  Additionally, claims based upon statutory violations of ERISA such as breaches of fiduciary duty, are not subject to exhaustion under well-established Fourth Circuit precedent. *See, e.g.*, *Smith v. Sydnor*, 184 F.3d 356, 364-65 (4th Cir. 1999).

## CLASS ACTION ALLEGATIONS

177.    Plaintiffs bring this action as a class action pursuant to Rules 23(a), (b)(1),  and

(b)(2) of the Federal Rules of Civil Procedure on behalf of themselves and the following classes

and all appropriate subclasses as determined by the Court (collectively "the Class"):

> Class 1: All individuals who are or were participants or beneficiaries under the Pension Plan for Hourly-Paid Employees of Continental Automotive, Inc. and Certain Affiliated Companies, and their eligible spouses, dependents, and survivors, who are now receiving, are entitled to receive, or will be entitled to receive retirement or pension benefits under the Plan, and whose benefit calculations by Defendants failed to include Vesting and Eligibility Service during periods of layoff.

> Class 2: All individuals who are or were participants or beneficiaries under the Pension Plan for Hourly-Paid Employees of Continental Automotive, Inc. and Certain Affiliated Companies, and their eligible spouses, dependents, and survivors, who accepted buy-outs of their retirement or pension benefits, and whose benefit calculations by Defendants failed to include Vesting and Eligibility Service during periods of layoff.

178.    This action is properly maintainable as a class action because the members of

Class are so numerous that joinder of all members is impracticable. The Class is composed of

individuals in numerous and various locations in North Carolina and throughout the United States.

Based upon information derived from Defendants' IRS Form 5500 filing, there are approximately

6,346 Plan participants as of the end of 2014. While the  exact number of Class members is

unknown by Plaintiffs at this time, Plaintiffs are informed and believe that there are hundreds of

affected Class members, perhaps more.

179.    There are questions of law and fact common to the Class, including legal and

factual questions regarding whether Defendants' actions impacting Plaintiffs' and the members

of the Class' promised retirement and pension benefits violated ERISA and the terms of the Plan,

and whether Defendants breached their fiduciary responsibilities by failing to follow ERISA and

the terms of the Plan.

180. Plaintiffs' claims are typical of those of the Class because Plaintiffs' claims and rights arise under the same Plan, Plaintiffs' claims challenge the same unlawful conduct on the part of Defendants, and Plaintiffs and the members of the Class have suffered the same or similar harm and damages as a result of Defendants' wrongful application of the Plan terms in denying service accrual, denying eligibility for benefits, miscalculating and underpaying pension and retirement benefits to Plan participants and beneficiaries, as well as fiduciary breaches that are associated with these actions, that will adversely impact their past and future benefits or pay-outs under the Plan, as described herein. Defendants owe the same fiduciary and other ERISA-based obligations to each Plan participant and beneficiary, including Plaintiffs and the Class. Resolution of the claims will provide common answers to all members of the class under ERISA. No individualized proof or analysis is required as the single course of conduct perpetrated by Defendants gives rise to all of the Class claims. There is no conflict between the Class Representatives and any other Class Member with respect to this action. Absent a class action, Plaintiffs and the members of the Class may not receive benefits, restitution, or other appropriate relief, will continue to suffer losses, and these violations of law will proceed without remedy.

181. Plaintiffs are representative parties who will fairly and adequately protect the interests of the other members of the Class because they have the same or similar claims and interests arising out of the same or similar operative facts and the same law and contractual obligations and benefit plan. Plaintiffs have no interests antagonistic to, or in conflict with, the Class they seek to represent. Plaintiffs have retained counsel competent and experienced in class action and ERISA litigation, and who, in fact, have already obtained a favorable judgment on the merits on this same issue against these same defendants in this same Court.

182. A class action is superior to other available methods for the fair and efficient

Case 3:16-cv-00502   Document 1   Filed 06/29/16   Page 23 of 28

adjudication of the claims asserted herein. The prosecution of separate actions by members of the Class would create a risk of inconsistent adjudications with respect to individual members of the Class, which would then establish incompatible standards of conduct for Defendants. The likelihood of individual Class members prosecuting separate claims is remote. Final injunctive relief and corresponding declaratory relief and other relief sought is appropriate respecting the proposed Class as a whole.

183. Defendants have acted or refused to act on grounds generally applicable to the Class as a whole by engaging in the same wrongful interpretation of the Plan and in the same violations of ERISA, thereby affecting all Class members in a similar manner and making declaratory and injunctive relief to the Class as a whole appropriate.

184. Plaintiffs anticipate no unusual difficulties in the management of this action as a class action.

## FIRST CLAIM FOR RELIEF
### (Wrongful Denial of Benefits Under Section 502(a) of ERISA)

185. Plaintiffs incorporate the allegations contained in the preceding paragraphs of the Complaint.

186. Defendants are obligated to provide retirement and pension benefits pursuant to the governing Plan.

187. Defendants have wrongfully denied benefits to Plaintiffs and the Class in violation of the Plan and ERISA for the following reasons:

    a. Plaintiffs and the Class have been wrongfully denied accrued Vesting and Eligibility Service;

    b. Plaintiffs and the Class have been wrongfully deprived accrued pension and/or retirement benefits due or to become due;

24

c.  Defendants have calculated and paid benefits in a manner that violates the express and clear terms of the Plan;

d.  Defendants' interpretation of the Plan and determination of the rights to benefits is contrary to and exceeds the permissible scope of the provisions of ERISA and applicable regulations, and is unreasonable;

e.  Defendants' actions and interpretation of the Plan are contrary to this Court's precedent in *Carroll v. Continental Automotive, Inc., et al.*, Civ. No. 3:13-cv-693 (W.D.N.C.); and

f.  Defendants have violated their contractual obligation to furnish retirement and pension benefits to Plaintiffs and the Class.

188.  Defendants' actions constitute wrongful and actionable acts under ERISA Section 502(a)(1)(B) and (a)(3), 29 U.S.C. § 1132(a)(1)(B) and (a)(3), which entitle a participant or beneficiary to bring a civil action "to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" and "to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or … to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan."

189.  Defendants' actions as alleged herein constitute wrongful acts and breach obligations under ERISA and the governing Plan, and cause injury and damage to the individual plaintiffs and proposed Class members of both Class 1 and Class 2.

**SECOND CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty Under Section 404 and 502(a) of ERISA)**

190.  Plaintiffs incorporate the allegations contained in the preceding paragraphs of the Complaint.

191.    ERISA Section 404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A), obligates a fiduciary to discharge his or her duties "solely in the interest" of a plan's participants and beneficiaries and for the "exclusive purpose" of providing plan benefits and defraying reasonable expenses of the Plan.

192.    ERISA Section 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), sets forth the "prudent expert" standard of care. An ERISA fiduciary must act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

193.    Defendants have a fiduciary responsibility to administer the Plan in accordance with ERISA and the documents and instruments governing the Plan insofar as such documents and instruments are consistent with ERISA.

194.    Defendants have a fiduciary duty not to materially mislead its participants and beneficiaries, including retirees and surviving spouses.

195.    These ERISA fiduciary duties have been repeatedly described by courts as "the highest known to the law."

196.    Defendants breached their fiduciary duties to act prudently and in the sole interest of participants and beneficiaries when they misapplied the clear terms of the Plan, miscalculated the participants' Vesting and Eligibility Service, miscalculated the participants and beneficiaries' past and future benefit entitlements, and failed to pay all benefits due or to become due under the terms of the Plan.

197.    Defendants have been unjustly enriched and profited from their fiduciary breaches to the damage of the Plan's participants and beneficiaries, including Plaintiffs and members of the Class, who are entitled to declaratory, injunctive, and other equitable and make whole relief,

including but not limited to an order requiring Defendants to disgorge the value of the benefits

unjustly withheld from Plaintiff and the class members, whether through miscalculated benefit

payments or lump sum buyouts, together with all profits attributable thereto, an accounting of all

benefits, an order surcharging the fiduciaries, and such other and further relief as may be just and

proper under these circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for judgment

granting the following relief:

1.      A determination  that this is a proper class action to be certified under Rule 23,

appointing Plaintiffs as Class Representatives on behalf of the Class, and appointing the

undersigned as Class Counsel to represent the Class;

2.      Declaratory and injunctive relief, finding that Plaintiffs are entitled to Vesting and

Eligibility Service for the time they were laid off with recall rights;

3.      Declaratory and injunctive relief, finding that Plaintiffs are entitled to pension

and/or retirement benefits;

4.      An award to Plaintiffs and Class 1 members of retroactive and future benefits, and

on all claims expressly asserted and/or within the ambit of this Complaint;

5.      An award to  Plaintiffs and Class 2 members of recalculated lump sum buyouts,

and on all claims expressly asserted and/or within the ambit of this Complaint;

6.      A declaration that Defendants violated the terms of the Plan;

7.      A declaration that Defendants have abused their discretion by misinterpreting

and/or misapplying the terms of the Plan;

8.      A declaration that Defendants have violated the duties, responsibilities, and

27

obligations imposed upon them as a fiduciary under ERISA;

9.     Injunctive relief, compelling Defendants to make good on and awarding actual damages in the amount of any and all losses resulting from their breaches of their fiduciary duties;

10.     Enjoin Defendants from violating the terms of the Plan, ERISA, and any other applicable requirements of the law;

11.     Extraordinary, equitable, and/or injunctive relief as permitted by law, equity, and the federal statutory provisions set forth herein, including but not limited to enjoining Defendants from further violating their fiduciary obligations, awarding restitution, disgorgement, surcharge, and/or other remedial relief;

12.     Pre-judgment and post-judgment interest;

13.     Reasonable attorneys' fees, expert witness fees, and other costs and expenses under ERISA and as otherwise provided by law; and

14.     Such other relief as this Court may deem just and proper.

Dated: June 29, 2016

/s/Norris A. Adams, II
**NORRIS A. ADAMS, II**
N.C. Bar No. 32552
nadams@essexrichards.com
**EDWARD G. CONNETTE**
N.C. Bar No. 9172
woody@essexrichards.com
**CAITLIN H. WALTON**
N.C. Bar No. 49246
cwalton@essexrichards.com
**ESSEX RICHARDS, P.A.**
1701 South Boulevard
Charlotte, NC 28203
Phone: (704) 377-4300
Fax: (704) 372-1357

*Attorneys for Plaintiffs and the Class*